IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERT KEITH FULLINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:12-cv-344-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Robert Keith Fullington ("Plaintiff" or "Fullington") applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income under Title XVI §§1381-1383c, on October 17, 2008. Tr. 100. After his application was denied at the lower levels of determination, Fullington timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on September 8, 2010. Tr. 30; *See* Doc. 13 at 1. Fullington subsequently petitioned for review to the Appeals Council who vacated and remanded the ALJ's decision on January 25, 2011. *See* Doc. 13 at 2. A second hearing before the ALJ was convened on July 19, 2011. *Id.* On July 26, 2011, the ALJ rendered another unfavorable decision. Tr. 13. Fullington again petitioned for review to the Appeals Council who rejected review of Fullington's case on March 1, 2012. Tr. 1. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds

pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c).  After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Fullington seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits and supplemental security income benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405.  The court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied.  *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a

fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings.  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  There is no presumption

that the Commissioner's conclusions of law are valid.  *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Fullington, age 45 at the time of both hearings, has completed the 9th grade, and is able to read and write. Tr. 46, 48. Fullington has past relevant work as a small engine

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

mechanic (skilled, medium), electrician (skilled, medium), and plumber (skilled, heavy). Tr. 24, 92.  Fullington's alleged disability onset date is May 9, 2009. Tr. 22.  Fullington has not engaged in substantial gainful activity since August 25, 2007. Tr. 18. Fullington meets the insured status requirements of the Social Security Act through September 30, 2009. Tr. 18. Fullington claims he is unable to work because of back problems, a broken right arm, hand numbness and swelling, and pain in his left shoulder and right hand. Tr. 52.

Fullington received treatment from various medical practitioners and the ALJ considered the medical records from each. On April 29, 2009, Fullington saw David Arnold, M.D. with complaints of an injury to his right hand, and lacerations to his hand and arm. Tr. 349. Fullington told Dr. Arnold that he was able to do normal daily activities without discomfort. Tr. 350. Dr. Arnold found Fullington had bilateral tenderness of the knees with "mild" crepitus, but normal range of motion. *Id.* Fullington had normal coordination, sensation, and reflexes. *Id.* Dr. Arnold said Fullington's grip strength was normal and his gait was stable. *Id.* Dr. Arnold stated that Fullington had "limited use of the right hand due to significant laceration of the arm." *Id.* Dr. Arnold completed a "Clinical Assessment of Pain" and Physical Capacities Evaluation" of Fullington. Tr. 347. He stated that Fullington could sit and stand/walk for two hours each in an eight-hour workday. Tr. 348. He said that Fullington could rarely push and pull and perform gross manipulation and never perform fine manipulation. *Id.* Dr. Arnold said Fullington would miss on the average more than four days of work a month. *Id.*

On August 14, 2009, Fullington sought treatment at the Medical Center of Enterprise following an altercation and alleged assault, complaining of "blunt trauma after being struck with an oxygen tank." Tr. 354. Fullington admitted to using chewing tobacco and to "social use of alcohol." *Id.* X-rays of his wrist showed no acute fracture or dislocation. Tr. 357. A head CT scan showed soft tissue swelling on the right periorbital area, and no acute intracranial findings. Tr. 358. An orbital CT scan showed possible subtle nasal fractures, soft tissue swelling in the right periorbital area, and "milder" soft tissue swelling in the nasal area. Tr. 359.

On May 4, 2010, Keith Vanderzyl, M.D. examined Fullington at the request of the state agency. Tr. 362-371. Dr. Vanderzyl found that he had full range of motion of his right fingers and thumb. Tr. 364. He had full range of motion without pain, tenderness, or deformity in both elbows. *Id.* He had no pain or tenderness about the acromioclavicular joints on either side. *Id.* All x-rays of Fullington's cervical spine, lumbar spine, and right upper extremity were normal. Tr. 365. Dr. Vanderzyl completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" stating that he could could lift and carry up to 20 pounds frequently and 21 to 50 pounds occasionally. *Id.* Dr. Vanderzyl found that he could sit, stand, and walk for two to four hours each at one time and six to eight hours each in an eight-hour workday. *Id.* He found that Fullington could frequently use his feet for operation of foot controls, frequently perform postural activities except that he can only climb ladders occasionally, frequently work under all environmental limitations, he has full use of his hands except that he can only

occasionally reach overhead, and he is able to perform activities of daily living without assistance.  Tr. 367-71.

The ALJ followed the five-step sequential evaluation set forth at 20 C.F.R. § 404.1520(a)(4) in analyzing Fullington's claim.  Tr. 18-25.  The ALJ found that Fullington suffered from the following severe impairments: "ruptured long head of the left bicep; probable left rotation cuff tear of the left shoulder; pseudo anterior interossean nerve syndrome of the right forearm, not present on distraction; lower back pain, etiology not established; and hypertension.  Tr. 18.  The ALJ found that Mr. Fullington did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  Tr. 19.  The ALJ concluded that Fullington has the capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with several limitations.  *Id.*  Therefore, the ALJ found Mr. Fullington is not disabled.  Tr. 24-25.

## V.  ISSUES

Fullington raises two issues for judicial review:

(1) Whether the ALJ erred in substituting her own opinion for that of an examining doctor's opinion and failed to provide any evidence to contradict the opinion of an examining physician.

(2) Whether the ALJ failed to consider Mr. Fullington's explanation for lack of treatment before discrediting him for his failure to obtain treatment.
*See* Doc. 12 at 6.

## VI. DISCUSSION

**A.     The ALJ properly discounted Fullington's examining doctor because the evidence in the record is not consistent with his findings.**

Fullington argues that the ALJ erred by substituting her own opinion for that of an examining doctor's opinion and failed to provide any evidence to contradict the opinion of Dr. Arnold. *See* Doc. 12 at 6. In April of 2009, Dr. Arnold completed a Physical Capacities Evaluation and Clinical Assessment of Pain form that documented Fullington's limitations. Tr. 347-348. Dr. Arnold concluded from his evaluation that Fullington would be absent from work more than four days a month, he could sit and stand/walk for two hours each in an eight-hour workday, and he could rarely push and pull and perform gross manipulation and never perform fine manipulation. Tr. 347-48.

The law in this Circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists not to do so. *Jones v. Bowen*, 810 F. 2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR §404/1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-62.

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). An ALJ can also discount the opinion of a medical source where it is inconsistent with the source's own notes. 20 C.F.R. § 404.1527(c)(3). In weighing medical opinions, an ALJ need not explicitly address every factor so long as the ALJ provides good cause for rejecting the opinions. *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830 (11th Cir. 2011). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ articulated that the opinion of Dr. Arnold, a non-treating, examining physician was only entitled "little weight" because it was inconsistent with the "dearth of medical treatment," hospital emergency room notes, and the evaluation findings and opinion of Dr. Vanderzyl. Tr. 23. Emergency room records in 2008, after Fullington was hit with a pipe in the head and wrist, showed he had only "mild" tenderness to palpation of his right wrist and normal neurological functioning and x-rays showed no acute fracture and no dislocation. Tr. 21. The hospital treatment records show full range of motion of the neck with no muscle spasms, and no tenderness to palpation in the neck or back. *Id.* Fullington's gait was found to be normal. *Id.*

Fullington made "no complaints of back pain, neck pain, generalized weakness, numbness or tingling." *Id.* Fullington admitted that he although he was prescribed Tylenol and Ibuprofen for his pain, he never filled either prescription. Tr. 21-22.

In August of 2009, after being hit in the right eye with an oxygen tank, emergency room records showed Fullington had full range of motion in his neck and right wrist, and no bony deformities in his right upper extremity (although he was unable to flex his third through fifth fingers secondary to a previous injury) and a "[g]rossly non-focal" neurological examination. Tr. 21. X-rays of Fullington's right wrist again showed no fracture or dislocation. Tr. 21, 354-59. Fullington showed no tenderness to palpation in his neck or back, and no significant muscle spasms in his neck. Tr. 21.

The ALJ reviewed Dr. Vanderzyl's records and found:

> In terms of the claimant's alleged musculoskeletal impairments, Dr. Vanderzyl evaluated the claimant on a consultative basis in May 2010 (Exhibit 4F). Upon examination, Dr. Vanderzyl observed normal range of motion in the cervical spine, dorsolumbar spine, both shoulders, both elbows and forearm, both hips, both knees, both ankles, both wrists, and in both hands and fingers, including full passive range of motion of his right fingers and thumb. The claimant had normal grip strength and normal hand dexterity. The claimant was unable to make a fist with his right hand; however, on isolated testing and with distraction, the claimant had no difficulties moving his thumb or index finger and he was able to make a complete fist. Dr. Vanderzyl found no problems with respect to the claimant's left hand, fingers, or thumb. There were some scattered, small lacerations on the claimant's right forearm but they were nontender and well healed. Dr. Vanderzyl observed dirt and grease beneath all of the claimant's nails and good callous formation in his hands. The claimant had a ruptured long biceps tendon on the left arm but full active and passive range of motion with the left shoulder and no pain or tenderness in the acromioclavicular joint but a positive arc syndrome above 90 degrees. The claimant exhibited "discomfort" at the extremes of all motion on range of motion testing of the cervical spine and pain on back extensions. The claimant's heel to toe gait was normal and he was able to walk on both his

>toes and his heels.  Dr. Vanderzyl observed no loss of motor function or gait dysfunction.  Straight leg raise was negative.  Muscle strength was grade 5 in the upper and lower extremities.  Dr. Vanderzyl's impression is ruptured long head of the left biceps, probable rotator cuff tear of the left shoulder, pseudo anterior interosseous nerve syndrome of the right forearm which was not present on distraction, low back pain with an unknown etiology, and hypertension.  X-rays of the claimant's right forearm, wrist, and fingers were within normal limits.  X-rays of the left shoulder showed minor degenerative changes.  X-rays of the left shoulder also showed a subacromial osteophyte.  Although Dr. Vanderzyl could not determine the etiology, his impression was a probable rotator cuff tear.  Additionally, although Dr. Vanderzyl's interpretation of the claimant's lumbar spine X-rays refer to findings at various C levels (which would be applicable to the cervical spine, not the lumbar spine), Dr. Vanderzyl diagnosed only low back pain and no severe impairment of the neck.

Tr. 20-21.

The ALJ took particular note of some specific inconsistencies between Dr. Arnold's findings and those in the medical record as a whole.  Dr. Arnold opined that Fullington would be absent from work four or more days per month to receive medical treatment; however, the ALJ noted that he "has never sought treatment for any his impairments other than two hospital visits after he was allegedly assaulted." Tr. 23.  Dr. Arnold noted that Fullington had "marked difficulty opposing his thumb on the right hand;" however, Dr. Vanderzyl "subsequently found that the claimant was able to move his thumb and make a complete fist when he was distracted." *Id.*

The ALJ also took note of inconsistencies between Fullington's testimony and the medical records as a whole.  The ALJ found no evidence in the record that Fullington has any gait abnormalities, despite his testimony that he has leg pain. Tr. 23, 79.  The ALJ found that there is no evidence in the record to support any limitations on sitting, standing, or walking. Tr. 23.  Despite testifying that it hurts while sitting down, he later

testified that he just sits down throughout the day. Tr. 23, 79-80. Fullington testified that he was unable to wash dishes due to pain and swelling in his hands; yet he also testified that "the dirt and grime Dr. Vanderzyl found under his fingernails probably came from cleaning a barbecue grill, which would require good use of the hands." Tr. 22.

The ALJ also found that Fullington's work history indicates some inconsistency. Fullington testified that he has had chronic low back pain since the age of 8 or 9, and re-injured it in 2000; yet he has "worked successfully until 2007 when he allegedly injured his right wrist and left shoulder." *Id.*

Finally, The ALJ found that the opinions and findings of Dr. Arnold were continually inconsistent with various internal contradictions. Tr. 348-49. Dr. Arnold said that Fullington could only stand or walk for two hours in an eight-hour workday, but in his report he noted that Plaintiff could "do normal daily activities without discomfort." *Id.* Dr. Arnold stated in his report that Fullington had 1/5 grip strength, but then stated that Plaintiff had "normal" grip strength. Tr. 350-51. Dr. Arnold reported that the Plaintiff could rarely push or pull arm controls, but he found no muscle atrophy in the right forearm or reduced range of motion. Tr. 23. Furthermore, because there was no evidence that Dr. Arnold was Fullington's treating physician, his opinion is also not entitled to "substantial weight." *Id.* The ALJ found that "Dr. Arnold evaluated the claimant on only one occasion and the claimant's representative arranged the examination." *Id.* Based upon its review of the ALJ's decision and the objective medical evidence of the record, the court concludes that the ALJ did not err in failing to give Dr. Arnold's opinion controlling weight.

**B. The ALJ did consider Mr. Fullington's explanation for lack of treatment before discrediting him for his failure to obtain treatment.**

Fullington contends that the ALJ failed to consider his explanation that he lacks the finances to regularly seek medical care before discrediting him for his failure to obtain treatment, and instead found that "there was no evidence in the record that the claimant has made reasonable attempts to obtain treatment at a low or no cost clinic." Tr. 22. Fullington relies on *Dawkins v. Bowen*, which states while a remediable or controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, he is excused from noncompliance. 848 F.2d 1211, 1213 (11th Cir. 1988).

The Eleventh Circuit has held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability;" but the Court also stated that "poverty excuses noncompliance." *Ellison,* 355 F.3d at 1275 (quoting *Dawkins*, 848 F.2d at 1213. However, an ALJ is only required to determine whether the claimant is financially able to seek ongoing treatment and fill prescriptions when noncompliance is the *sole ground* for denial of disability benefits, and the record contains evidence that the claimant is financially unable to seek treatment. *Id.*

Noncompliance is not the sole factor the ALJ used to reach his negative credibility finding. Although, the ALJ clearly found that Fullington's lack of regular and consistent medical treatment and lack of substantial medication undermines his credibility regarding the pain rising to a disabling degree as being one factor, she just as clearly expressed the several other reasons, as discussed in detail above, that were inconsistent with

Fullington's subjective testimony of disabling pain. Tr. 20-22. The ALJ did not base her credibility finding solely on Fullington's lack of regular and consistent medical treatment, but rather as only a single factor among many. Therefore, the ALJ was not required to determine if Fullington was financially unable to seek treatment. *See Ellison*, 355 F.3d at 1275.

Nonetheless, the ALJ did make a determination as to Fullington's financial ability to seek treatment. The ALJ found:

> There is no evidence in the record that the claimant has sought any treatment specifically for his back, right hand, right wrist, or left shoulder pain other than two emergency room visits after allegedly being assaulted. Although the claimant's representative testified that the claimant has had "extreme difficulty" getting medical treatment, there is no evidence in the record that the claimant has made reasonable attempts to obtain treatment at a low or no cost clinic, or that such treatment is not available. Moreover, the undersigned finds the claimant's allegation that he is unable to afford treatment not fully credible in light of the fact that the claimant reported drinking alcohol and chewing tobacco.

Tr. 22. The ALJ not only found that Fullington has failed to present any evidence that he attempted to get treatment from low-cost or free clinics but was denied, the ALJ further found that Fullington's regular alcohol and chewing tobacco use discredits his testimony that he is unable to afford medical treatment. Therefore, the ALJ properly discredited Fullington's testimony regarding his financial inability to seek medical treatment.

### VII. CONCLUSION

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial

evidence and is due to be affirmed.

    DONE this 31st day of May, 2013.

                                    /s/ Terry F. Moorer
                                    TERRY F. MOORER
                                    UNITED STATES MAGISTRATE JUDGE